Mr. Katz please stop short of that I will thank you if it pleases the court My name is Charles Katz I represent Plaintiff and Appellant Lorraine Dadabali. I would like to take this opportunity to focus on what I think is perhaps the most troubling argument which involves the intersection or the confluence between FEHA the statute which prohibits harassment discrimination and so on the intersection of that and the preemption under section 301 where there is a collective bargaining agreement it is not uncommon for plaintiff who files a FEHA complaint in state court to include non-FEHA causes of action and state court causes of action including cause of action for breach of contract we understand we acknowledge fully that the breach of contract cause of the defendant to have the case removed to federal court and that's what happened here however once the breach of contract and to that extent all of the non-FEHA claims are dismissed all that's left are the FEHA claims there should be no preemption the cases are Leach and including Lingell versus Norge that the preemption under 301 does not trump the FEHA claims there is no need to interpret the collective bargaining agreement if somehow there were first of all I don't think it would even be a FEHA claim but if somehow the the plaintiff's claim required an interpretation of the collective bargaining agreement we acknowledge that preemption applies but that's not the case here Mr. Tatz how do you distinguish Audet versus International Longshoremen's and Warehousemen's Union? because that case did not did not was not a true FEHA case it was not a case of a claim of discrimination it had to do with as I recall the lunch hour which we acknowledge that would be that would fall under the collective bargaining agreement the collective the collective bargaining agreement in that case provides the rights that these litigants were seeking to vindicate that's not the case here our case is a pure discrimination harassment case your position is that the state law prohibits discrimination in FEHA apart from whatever the collective bargaining agreement says judge absolutely and that's why there is no preemption in fact in this case I can't speak to other collective bargaining agreements but in this case and I've cited that provision there's essentially one sentence in the collective bargaining agreement and all that it says is St. Luke's and its affiliates prohibit discrimination based upon race creed or color the collective bargaining agreement does not spell out how the rights are to be vindicated how a violation an instance of harassment discrimination is to be adjudicated that's only in your honor 12950 of the California government code FEHA what judge justices what this is what really remember there's no justice on the ninth circuit just judges thank you I apologize for an oversight but there's a very very important policy reason behind this if the defendant were allowed to assert that the defense of the FEHA claim requires or is based upon an interpretation of the collective bargaining agreement every single case that's exactly what the district court said district court said the defense of the discrimination is based upon an interpretation of the collective bargaining agreement without any further examination of that proposition if that were true then in every case where plaintiff brings even a strict exclusive FEHA claim in state court all the defendant would have to say is there's a collective bargaining agreement we're now in federal court Mr. Katz I want to explore with you the sanctions issue very personal to you I'm sure and painful why did you find it necessary to file the second amended complaint since you could have appealed the I guess initially was it what is it was a demur sustained without leave to amend as to the first amended complaint you know even in hindsight that was the right decision for this reason the court had apparently invited me to amend the complaint to state a harassment that was in the first amended complaint what I did in the second amended complaint was provide even more factual basis for the harassment claim now it's true that the pleading itself was prepared in such a way that the additional allegations were in the in an earlier cause of action which was then incorporated by reference in the harassment claim but the point was this in the interest of judicial economy when the trial court gives me the opportunity to amend I'd much rather amend and move the case forward rather than seek an immediate appeal and perhaps without any reflection upon this court lose a year or a year and a half while the case is on appeal you recall this is an employment case in many of these employment cases the plaintiff's employment has been terminated it is imperative that the case be moved forward as quickly as possible so I made a judgment call as I see even in retrospect it was the right decision so your state of mind was not one of contempt for the court but rather you were doing what you felt was in the interest of justice in your client's best interest is that a fair way to state it? absolutely if I have just a moment it's not uncommon for a plaintiff's attorney to take these cases on a contingency fee basis these are not money-making cases I think it's very troubling that sanctions are awarded in a case where at worst plaintiff misconstrued the law regarding removal well I don't think I did but if anything it was a question of the interpretation of the law there was never any intent to delay the judicial process on the contrary I hope I've answered your question thank you very much if I may reserve the balance of my time if any I will start with addressing the preemption issue and in particular the Audette case because it is my belief your honor that Audette controls Audette was a Washington State case it was not a FIHA case yet it involved a Washington State analog to the FIHA in that case the court found section 301 preemption because in order to completely resolve the discrimination complaint under the Washington State statute the court would have to look at and interpret the collective bargaining agreement the fundamental basis for section 301 preemption does the court have to look at and interpret the collective bargaining agreement Mr. Anais what part of the collective bargaining agreement does the court need to interpret to resolve the FIHA claims in this case yes your honor and it is not the discrimination provisions which is what most of appellants brief touched on it's the clustering provisions of the collective bargaining agreement those are pretty straightforward aren't they they are not your honor indeed to even understand what clustering is clustering is different in each particular hospital to understand what cluster a particular group is in you have to look at the agreement we need to go no further than the plaintiff's own complaint and the operative complaint for the demur that was sustained but isn't it a factual inquiry whether a staffing shortage in the emergency room or a case of emergency which required Dedabali to float outside the intensive care unit no that is controlled by the collective bargaining agreement and as the plaintiff herself pleads in the complaint under the collective bargaining agreement and my reference here is to page 177 of the record under the collective bargaining agreement and in compliance with state law certain units were clustered in the hospital under the collective bargaining agreement clustering and then she defines clustering means related units in a cluster for example an intensive care unit nurse may also work in the telemetry unit that concept of what units are clustered together is not something that is knowable outside of looking at the collective bargaining agreement because it varies facility by facility going further she contends in this particular case the issue is whether or not she can be made to float as an ICU nurse whether she can be made to float to the emergency room and in order to determine that you have to look at the particular floating provisions of this collective bargaining agreement and I thought on her FIA claim if I could interpose a question so that you know my concern it was that on the FIA claim or FIA claims she was saying that the termination was discriminatory and that all the business about going to the emergency room and all that was pretextual and that's correct your honor and what the if that's her theory of discrimination to assess that one doesn't have to interpret it seems to me doesn't have to interpret your honor except that is exactly the issue that was in Audet as well and what the Audet court pointed out is although in the first instance the prima facie case may not require looking at the collective bargaining agreement under the FIHA and under California state law the employer is entitled to proper its legitimate non-discriminatory reason for making its decision the employers reason in this case your honor was because Ms. Dettabali was insubordinate and refusing to care for a patient in the emergency room so it's the defense aspect of it that is the hospital's right to put forth its legitimate non-discriminatory reason which will necessarily implicate looking at the collective bargaining agreement which is exactly your honor what the court in Audet said and exactly what the trial judge below looked at and that is quite simply in order to resolve this case under state law in order to resolve this case you cannot judge whether or not what the hospital did was correct you cannot judge whether or not it was insubordinate or not unless you know whether or not the hospital had the right to ask Ms. Dettabali to go to the emergency room and to ask Ms. Dettabali to go to the emergency room turns on the staffing provisions and the clustering provisions of the collective bargaining agreement. Is it the hospital's position that if any portion of the collective bargaining agreement is involved in your defense that there is a preemption? I don't know that I would go so far as to say any, but this is a, this particular provision is central to the defense. It is the defense. The defense to, the defense to the discrimination claim is we were not being discriminatory in terminating you, we had a legitimate reason to terminate you which is we had every right under the agreement between the union and us and the employees, we had every right to ask you to do that. So this is, this is not a tangential claim and it certainly is not, we are not basing it on, as the appellant seems to argue, we are not basing our position on the non-discriminatory language in the collective bargaining agreement. Rather, we are basing it primarily on the clustering language, but then also on the grievance procedure language. A grievance in this case was started but then abandoned, and also on the just-cause provision in the contract. So I would say on those three things, but primarily on the clustering, that is what requires the Court to look at the collective bargaining agreement to understand even what a cluster is in the case. How do you distinguish, I've got three of many cases here, but Ramirez, Lindsay Olive Growers, and Jackson v. Southern California Gas that at least seem to have similarities to this case, and those were found not to be preempted by Section 301. How do you distinguish those cases? Ramirez, Jr.: Your Honor, I believe there's a line of cases in the Ninth Circuit which the Audet case called standalone, standalone discrimination cases. And it is not St. Luke's position that every CHIHA case, it would be preempted if there was a collective bargaining agreement, and certainly that could not be the case. But our position here is, Your Honor, this case is different because it is not a standalone case. It's not a standalone case because to proffer our legitimate nondiscriminatory reason, we must rely on the language of the collective bargaining agreement, which under Section 301 of the Labor Management of the LMRA requires preemption. So I believe there's a line of cases which are primarily disability cases, but also other CHIHA cases, which are standalone cases where employers have tried to say, just because we have a CBA, or just because we have a CBA with a nondiscrimination provision in it, 301 preemption should prevail. This case is different because in order to mount our defense, we need to look at the language of the clustering language in the collective bargaining agreement. Kennedy, Jr.: Let me just – oh, I'm sorry. Go ahead, Judge. Kennedy, Jr.: What is Attorney Katz going to say in response to this notion that we're going to have to interpret the clustering provisions of the collective bargaining agreement and, therefore, it is preempted by the LMRA? What is he going to say in response? What is he going to say about that? Well, I believe in his opening statement he said that if you need to interpret the collective bargaining agreement, he agrees that it's preempted. Right. So it seems like he hasn't got much of a case left anymore, based upon what you've just said. I believe, Your Honor, that this is a fairly straightforward case of Section 301 preemption, given the clustering – given the clustering rights which are spelled out in the collective bargaining agreement. I want to just go down some elements of the – what I gather is an intersection between the collective bargaining agreement and the FIHA claims here to get your take on this thing. It doesn't seem to me that Mr. Katz is really disputing the meaning of the collective bargaining agreement. In other words, there's – the interpretation is pretty clear. That of all these claims of wrongful termination and employment discrimination on the basis of race and ethnicity don't depend on a violation of the collective bargaining agreement. I think you would agree with that. In this case, you talk about the cluster and the assignment provisions. I'm – those seem pretty unambiguous to me. Why are they ambiguous? Your Honor, looking at page 178 of the record, which is the First Amendment complaint, Ms. Dettabali alleges, under the collective bargaining agreement, the emergency room was not a unit within plaintiff's – within plaintiff's cluster, since she was an intensive care unit nurse. Right. Her position is, under the clustering provisions of the CBA, she did not have to go to the emergency room. St. Luke's position is, under the clustering provisions of the CBA, she did have to go to the emergency room. To resolve that, the only document that speaks to that issue is the collective bargaining agreement. And therefore, you know, yes, there's – he's made discrimination claims, but under Audet, our defense absolutely requires an interpretation of these clustering provisions, because she is taking one provision – excuse me – she is taking one position as to the meaning of the clustering provision. That is, I don't have to go to the emergency room. And St. Luke's is taking the opposite position, which is, you do, in fact, have to go to the emergency room under – under these provisions. Now, that – which – which of the causes of action are you referring to? The first cause of action here is for employment discrimination. Is that in the incorporated provisions that you're referring to? My reference, Your Honor, is on the First Amendment complaint, which is the complaint – there's a Second Amendment complaint. Right. And I'm looking at the Second Amendment complaint here. Oh. My reference is to the First Amendment complaint, because that is the complaint that the order granting the demur address. I understand. But the one that's on appeal here is the Second Amendment complaint, is it not? Well, I believe – I don't believe that's necessarily true. I believe the court's order is merged into the judgment. What's on appeal here is whether or not there's – there's preemption. The court – the court's finding as to preemption, which is what's on appeal, is based on the order, which dismisses the First Amendment complaint. Right. And so the First Amendment complaint is what governs with respect to why we're here and whether or not there's Federal action. Maybe – maybe I don't understand the facts correctly. I thought that the court sanctioned Mr. Katz because he filed a Second Amendment complaint and that he appealed the court's demur, sustained without leave to amend, on the Second Amendment complaint. Is that incorrect? That is incorrect, Your Honor. Okay. There was a complaint that was filed. A demur was – a demur was interposed. Right. A First Amendment complaint was filed. Right. A Second Amendment was interposed, raising the 301 issues. Right. That – the court issued an order dismissing the discrimination claims with prejudice and ordering Mr. Katz that he could file, if he had sufficient facts, a 301 claim, which he could not because it was time-barred, that he could file a harassment claim if he alleged sufficient facts to do so, and that he could allege – those were the parameters of the order. Mr. Katz filed a Second Amendment complaint. Essentially, with the same harassment allegations, nothing changed except for the addition of two dashes in the harassment section. And what did the – what did the superior court do with that? The district court. The district court. Excuse me. The district court said that sanctions were appropriate. Right. I understand about the sanctions, but, I mean, was it filed or wasn't it filed, the Second Amendment complaint? The Second Amendment complaint was filed because she gave Mr. Katz leave to amend after she was detained. I understand. But did she rule on the Second Amendment complaint? She did rule on the Second Amendment. Okay. But he didn't appeal that. He appealed the first one? He appealed the finding of preemption, which is – that finding is in the court's second order, which is the order going to the First Amendment complaint. And he appealed the imposition of sanctions, which is contained in the court's third order, for failing to comply with her directive in the second order. So the finding as to their Federal preemption here is in the court's second order. And that is located, Your Honor, at page 234 of the record. The order granting sanctions is on page 331 of the record. So those are the issues. And I apologize, it's not a demerit motion to dismiss. Okay. Okay. You don't have any other questions of the Federal court? It very much is, Your Honor. If I could turn, perhaps, to the sanctions issue, unless there are additional questions on the preemption. I – my primary concern was whether he has stated a claim upon which relief can be obtained from the collective bargaining agreement. And you made reference to a First Amendment complaint. I'm looking at the Second Amendment complaint, which was the most recent one filed, to see whether there was something in there. That was the reason why we had this little colloquy in the first place. I see, Your Honor. And I – the clustering language also appears in the Second Amendment. It does. I was – I was, however, focused on the First Amendment. I understand. So you're saying that the same language that was the subject of your earlier discussion is also in the Second Amendment complaint? Yes. And regardless, the fact of clustering is not in dispute here. I mean, it's been pled and signed on in the CBA. Well, I guess that's the real issue here. It's not in dispute. Yes. So what do we need that collective bargaining agreement? No, no. That the CBA has a clustering provision is not in dispute. That you need to look at that clustering provision to make the determination of whether or not Mr. Ebali is insubordinate. Isn't the issue here not whether we need to look at it, but rather there is a dispute about it? If it's a – if it's completely clear, and you talk about it, but it's completely clear, are you saying that the preemption is required just because there is a collective bargaining agreement? No. I'm saying because you need to interpret the collective bargaining agreement. If everybody agrees what it means, why are we interpreting it? The parties don't agree what it means. Ms. Dedabali says the clustering provisions say she does not have to go to the emergency room. The hospital says the clustering provisions say you do have to go to the emergency room. That is the – and the only way to resolve that is to look at and interpret and read the clustering provisions. I have a few minutes left if I could address briefly the sanctions. The first point I would like to make, Your Honor, with respect to the sanctions motion, and I'll be brief on this, is that I believe under the cases we cited in our brief, Mr. Katz does not have – does not have standing to challenge them because the appeal was filed on behalf of Ms. Dedabali, and my citation there is to the Byrd case and the Cabrera case, which, to me, both seem to hold fairly plainly that if – if the party is the one noticing the appeal, not the attorney, that is the one who has the right to say that the attorney does not have standing. There is a case, I think it's called Retail Flooring. Correct. That suggests that if the intent to appeal is clear, that we can view it that way. I believe, Your Honor, that the Retail Flooring case is distinguishable because in that case – that case turned on an interpretation of Federal Rule of Appellate Procedure 3C, and in that case, unlike this case, the attorney was also a party. In other words, the attorney, whose name was Donald Ricketts, was also a party to the case. He's listed in the caption as a – as a plaintiff. And I believe that distinction because what the Federal Rules of Appellate Procedure say is that, and my reference here is to 3C4, an appeal must not be dismissed for informal – informality of form or title of the notice of appeal or for failure to name a party whose intent to appeal is otherwise clear. So I believe Ricketts – or Retail Flooring is correctly decided because the attorney there was a party, but that you can reconcile those cases with the Berg and Cabrera cases because in those cases, the attorney was not a party.  So is the Court of Appeal, in the interest of justice, to address these issues, regardless of the standing of the attorney? Well, I believe standing is a constitutional issue, so I don't know that that's necessarily the case. So for a non-party to come before the Court without standing to address something, I believe that's the case. The sanction order, now, maybe she doesn't have standing, but wouldn't it be – wouldn't the order be before us in terms of our jurisdiction, even if Mr. Katz didn't have standing? The – the – my research with respect to Ninth Circuit case law says that, and I quote from the Berg case, because parties lack standing to appeal an order imposing sanctions against their attorney, we lack jurisdiction to review the award of sanctions. That is my understanding of the status of the case law of the Ninth Circuit. But even if she doesn't have standing to appeal it, if she's brought it to us, do we not have the power to look at it? Under – under – respectfully, under the cases that I've found, I have not found the case that says that's correct. I certainly do not mean to be presumptuous, but the research I've done indicates that the Ninth Circuit's teaching is that you will not resolve that question if a party does not have standing, because then you do not have jurisdiction. So you're – from your perspective, whatever our view is on it, you – we don't even have jurisdiction to consider the sanctions issue at this point. My view, Your Honor, is that this Court lacks jurisdiction, correct. In retail flooring, was the attorney not just named in the complaint, but actually party to the appeal? The – the – in retail flooring, the attorney's name was Donald Ricketts, and he appears in the caption as a plaintiff. Right. And was he a party in the suit? Sometimes, in practice, at least, I recall, someone could be named in the caption, but, you know, not served and not really in the suit. The – the – I do not believe the opinion addresses that. And the opinion certainly does not make that distinction. That's certainly the case. The opinion does not address the distinction between the Berg case I cited and this case. So if I could impose on just one further question. Yes, Your Honor. If, God forbid, from your point of view, this was not preempted by the LMRA, would it not be arguable that the Court was therefore without jurisdiction with respect to all of it, including the entry of the sanctions order? No, Your Honor. That's not correct, because the Court has – the Court had original jurisdiction – or the Court had jurisdiction over the claim to remove it based on Section 301. It made a determination to keep both the 301 claims as well as the pendant claim, which is the harassment claim. And it exercised that discretion under the – and it has no, my reading of the case, Your Honor, is – has no independent duty to sua sponte make that determination under the Akari case, which I cited in my papers. Mr. Katz never asked for remand. Mr. Katz never at the time challenged the supplemental jurisdiction of the other claims. And so my position is that the Court below properly had jurisdiction. Thank you. Thank you very much. Thank you, Mr. Hernandez. Mr. Katz, you have reserved some rebuttal time. Your colleague has given us plenty to think about. I'm sorry, Judge. Go ahead. Go ahead. Thank you. Let me dispose of the issue of the Court's jurisdiction to review the order of sanction The order concluded with the judgment that sanctions are imposed against Mr. Katz, not against Ms. Dedabali. The notice of appeal specifically said we appeal from the judgment and the order imposing sanctions. I've got a painting of a horse at home. It's a very clear painting of a horse. I've not bothered to put a little brass tag on it saying this is a painting of a horse. This was an appeal from the order imposing sanctions. That's sufficient notice. What do you say to opposing counsel's point that since the sanctions order was against you personally, you're not a party to the litigation, that, in effect, we have no jurisdiction here? We do have to have a case in controversy before us before we can decide something. I understand. How do you have standing to argue that, even though you mention it in your brief? Because the appeal is from the entire judgment. Dismissing the case and inextricably bound with that is the imposition of sanctions. But the sanctions were not awarded against your client, were they? They were not, absolutely not, against me and me alone. And it's your client that had the case in controversy. So I'm interested in your addressing Mr. Anais's standing issue. He distinguishes the cases that the case that Judge Gould mentioned, the flooring case. What? How do you distinguish it? Well, in Florian, there's no question but that the attorney happened to be a party as well. So he was clearly before the Court. That would certainly be a sufficient basis for the Court to address this matter. There's nothing in that opinion that suggests it is a necessary condition that, under no circumstances can the Court, if it so wishes, entertain here the appeal. And I think there's a very – as I alluded – attempted to allude earlier, I think there's a very important policy reason that if an attorney gets it wrong – I don't think I did – but if an attorney gets it wrong, as long as it was the call was not made to frustrate the Court that imposing sanctions against an attorney makes it virtually impossible for plaintiffs, particularly in this type of case, FEHA claims, to have their rights vindicated. Is there something about the nature of the administration of justice that makes this different? Here you're talking about an attorney, a member of the bar. We're judges of the Court. We admit people to the bar, et cetera, et cetera. Is there something different about the nature of the administration of justice that makes the standard for, if you will, standing different than in a normal situation? And if so, what's the authority for that? I think the authority is the obligation of the Court to police members of the bar. This is the Court's opportunity. When the Court finds that an attorney has flaunted a rule of the Court, has abused authority for an improper person, it is the obligation of the Court to impose sanctions. But when that decision is incorrectly made and, as I submit, a signal is sent to the members of the bar that perhaps these cases are just not worth taking, I think this Court has to examine carefully the propriety of an award of sanctions. Sir, what about the problem that your colleague raises here? We've got to look at that collective bargaining agreement and we've got to look into this clustering provision, and we can't determine the merits of your client's case without referring to that collective bargaining agreement. And, therefore, it was preempted by Lindner. I think the lingo and progeny standard is this. While some recourse to an examination of a collective bargaining agreement may be possible, the test is, is it necessary? Can the rights of the defendant be adjudicated only by a resort to an examination of a collective bargaining agreement because there is some difference of opinion as to the interpretation? That's not what this case is about. I concede, certainly, obviously, there may be cases in which the dispute can only be resolved by a resolution of the interpretation of the collective bargaining agreement. Harassment, discriminations are not those cases. As I understood the gentleman, what he was saying was that it's your assertion that the discrimination occurred here because this lady was ordered to go to the emergency room, and that's your point of view, that that was outside of her cluster, and it's his point of view that under the collective bargaining agreement, the hospital had the right to, to order her to go to the emergency room. And that appears to require some examination of the agreement. That is not by any means the sum and substance of Ms. Dedabali's harassment and discrimination claims. Certainly, that's where this whole situation arose. But what she's – she is not complaining that she shouldn't have been a part of the clustering. What she's complaining is that her treatment as a result of her age, ethnicity, was different from how white employees were treated, that it was done in violation of FEHA's prohibition against discrimination and harassment. With all respect, I think if that's all the – if only the clustering language, which, again, we don't dispute, is viewed as the sole basis of Ms. Dedabali's claim, then I understand how a respondent would arrive at the position that it did. But that's not the case. It's certainly not what was alleged in the complaint. All right. But you do have some provisions in here in the complaint that do clearly require an understanding of what a cluster is, staff emergency and so on, do you not? Yes. But the test is, are they necessary for resolution of the dispute? Do her discrimination – What about for the defense of the suit? That's what Mr. Anaya says. Well, Judge, that is what is troubling. I understand the defendant can fashion whatever defense it wants and rely exclusively on the collective bargaining agreement. But a defense to a claim of harassment or discrimination will implicate many other factors far beyond the collective bargaining agreement. That's what these cases are about. I don't mean to be flippant, but a defendant who based his defense against a discrimination and harassment claim, looking solely at the collective bargaining agreement, I think is going to end up with the very unhappy result for his client. Thank you. Thank you, Mr. Katz. Thank you very much. The case argued shall be submitted. Court will take a recess for 15 minutes. We appreciate argument of both counsel. All rise. This court stands to receive recess for 15 minutes. Thank you.
judges: Gould, Smith, Covello